# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MYRA V. BACA,

        Plaintiff,

vs.                                 No. CIV 00-792 JP/LCS

WILLIAM A. HALTER,[1]
Acting Commissioner of Social Security,

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER came before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Decision filed January 31, 2001. (*Doc. 8*).  The Commissioner of Social Security issued a final decision denying the Plaintiff her claim for a period of disability pursuant to Title II of the Social Security Act, 42 U.S.C., §§416(i) and 423. The United States Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, finds that the motion is not well-taken and recommends that it be DENIED.

## PROPOSED FINDINGS

## I. PROCEDURAL RECORD

    1.        Plaintiff Myra Baca filed an application for disability insurance benefits and

---

[1] Effective January 20, 2001,William A. Halter was appointed to serve as Acting Commissioner of Social Security. Pursuant to FED. R. CIV. P. 25 (d), William A. Halter, Acting Commissioner of Social Security, is substituted for Kenneth S. Apfel, Commissioner of Social Security, as the defendant in this action.

supplemental security income with the Social Security Administration on July 8, 1996 alleging a disability since February 16, 1996. *See* R. at 75-76. Plaintiff alleges that she suffers from asthma, borderline intellectual functioning, and anxiety related disorder. *See* R. at 75-76. Plaintiff's application was denied at the initial level on November 6, 1996. *See* R. at 75-76 and at the reconsideration level on March 5, 1997. *See* R. at 83. Plaintiff appealed the denial of her claim by filing a Request for Hearing by Administrative Law Judge on April 28, 1997. *See* R. at 86.

2.      The ALJ held a hearing on May 15, 1998 and issued his decision on August 21, 2001. *See* R. at 26 and 29. In that decision, he analyzed Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993).  The ALJ found that Baca had not engaged in substantial gainful activity since the onset of her condition (Step 1); that she did not suffer from a severe impairment or combination of impairments (Step 2); and that the severity of Baca's impairments did not met or equal any of the impairments found in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. §§ 404.1501-.1599 (Step 3).  *See* R. at 19.  Neither party disputes these findings.

3.      The ALJ then found that Baca's residual functional capacity enabled her to perform nonexertional requirements of work except for exposure to dust and fumes and that she was unable to perform her past relevant work as a custodian/janitor. (Step 4). *See* R. at 24. The ALJ finally determined that Ms. Baca could make a vocational adjustment to work as a kitchen helper classified as light exertion and unskilled. (Step 5). *See* R. at 24. The ALJ based his finding on the responses to the hypothetical questions posed to the vocational expert. *See* R. at 23. The questions set out factors of age, education, past work, and residual functional capacity. *See* R. at

23.

4.      The ALJ entered his decision on August 21, 1998. *See* R. at 26. Thereafter, the

Plaintiff filed a request for review on August 25, 1998 to the Appeals Council. *See* R. at 13. On

March 31, 2000, the Appeals Council issued its decision denying request for review and

upholding the final decision of the ALJ. *See* R. at 7. The Plaintiff subsequently filed her complaint

for court review of the ALJ's decision on June 1, 2000. (*Doc. 1*).

## II. STANDARD OF REVIEW

5.      The standard of review in this Social Security appeal is whether the

Commissioner's final decision is supported by substantial evidence and whether he applied correct

legal standards.  *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-

98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to

support a conclusion."  *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047

(10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation

omitted)).  A decision of an ALJ is not supported by substantial evidence if the evidence

supporting the decision is overwhelmed by other evidence on the record.  *See Gossett v. Bowen*,

862 F.2d 802, 805 (10th Cir. 1988).

6.      In order to qualify for disability insurance benefits, a claimant must establish a

severe physical or mental impairment expected to result in death or last for a continuous period of

twelve months which prevents the claimant from engaging in substantial gainful activity. *See* 42

U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d at 1486. The regulations of the Social

Security Administration require the Commissioner to evaluate five factors in a specific sequence

in analyzing disability applications. *See* 20 C.F.R. § 404.1520 (a-f).  The sequential evaluation

process ends if, at any step, the Commissioner finds the claimant is not disabled.  *See Thompson v.*

*Sullivan*,  987 F.2d at 1487.

7.      At the first four levels of the sequential evaluation process, the claimant must show

she is not engaged in substantial gainful employment, she has an impairment or combination of

impairments severe enough to limit her ability to do basic work activities, and her impairment

meets or equals one of the presumptively disabling impairments listed in the regulations under 20

C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20

C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity

considering her residual functional capacity, age, education, and prior work experience.  *See id.*

## III. ADMINISTRATIVE RECORD

8.      The record indicates that Ms. Baca's alleged onset date of disability was June 28,

1996. *See* R. at 89.[2] Since that time, the Plaintiff attributes her inability to work to her asthma and

learning disability. *See* R. at 47 and 48. Ms. Baca contests that her asthma originated in 1988. In

June of 1996, Ms. Baca alleged she stopped working as a high school custodian due to the fact

that the dust, vacuuming, grass cutting, and sweeping the sidewalks irritated her asthma. *See* R. at

43. However, the principal of Espanola High stated, in an evaluation form, that Ms. Baca did not

---

[2]      There is contradictory evidence concerning the Plaintiff's alleged onset date. Page 89 of the record
indicates that Ms. Baca's alleged onset date was either February 16, 1996 or June 28, 1996. *See* R. at 89. The
ALJ's opinion indicates February 16, 1996, *see* R. at 19, but the transcript reveals that Ms. Baca testified that June
of 1996 was her onset date of disability. Therefore, for purposes of this opinion, the Court will recognize June 28,
1996 as Ms. Baca's onset date.

make "sufficient improvement in her growth plan and that she continues to have a variety of excuses for being late and needing to leave work early, or not show up at all." *See* R. at 143. As a result, Ms. Baca stopped working in July of 1996. *See* R. at 40. She has not returned to work since that date. *See* R. at 40-43. Thereafter, the Plaintiff applied for and received unemployment benefits for approximately six months before they were terminated. *See* R. at 40.

9.      Throughout the years of 1996 and 1997, Ms. Baca had numerous visits to the hospital. *See* R at 208-213. Her complaints consisted of either cold like symptoms or asthma. *See* R. at 208-213. Ms. Baca's medical history included acute asthma, wheezing, and intermitted coughing and vomiting. *See* R. at 167, 169, 215, 249, 278, and 283. Over the years, Ms. Baca was prescribed various medications including Albuterol inhalent, Beclovent inhalent, Combivent inhalent, Accolate, and Nubain. *See* R. at 167, 251, 283, and 323.

10.     In October of 1996, Ms. Baca was seen by Dr. Robert Krueger who has a Ph.D. in Psychology. *See* R. at 205. Dr. Krueger stated within his evaluation that Ms. Baca "[has] significant learning problems and scored at a level of Mild Mental Retardation with verbal skills, and at a Borderline level with visual motor skills." *See* R. at 205. The Doctor also stated that "she did not appear to meet the diagnostic criteria for having any serious emotional disorder." *See* R. at 205. Later that year, Dr. Gabaldon evaluated and assessed Ms. Baca's functional capacity. *See* R at 191. His summary conclusions reported Ms. Baca's understanding and memory as "Not Significantly Limited" but ranked her ability to understand and remember detailed instructions as "Markedly Limited." *See* R. at 189. The Plaintiff's sustained concentration and persistence rating was ranked as "Not Significantly Limited" to "Moderately Limited." *See* R. at 189. The Doctor's

personal remarks stated that Ms. Baca "exhibited no depression but some anxiety, and should be able to do simple routine work." *See* R. at 191.

11.     On November 25, 1997, Dr. Michael Kaufman, Ms. Baca's treating physician, stated that Ms. Baca's asthma was severe and that "she is certainly unable to do any sort of physical type work. <u>She would undoubtedly would do a whole lot better with adequate medication</u>, but, because she is unable to work, she is unable to afford this." *See* R. at 251. (emphasis added). The record indicates, however, that by March of 1998, Ms. Baca's asthma was under better control because she started receiving free medication. *See* R. at 323. Additionally, there are other documented occasions where Ms. Baca's asthma was under control. *See* R. at 211, 278, 323.

## III. DISCUSSION

12.     The Plaintiff raises the following arguments in support of her Motion to Reverse or Remand the Administrative Agency Decision.  First, Plaintiff contends that the ALJ failed to follow the expert medical opinions of the Administration's own physicians as required under Social Security Ruling (SSR) 96-6p; second, the ALJ failed to make an accurate determination of the claimant's residual functional capacity (RFC) as required by SSR 96-8p; third, the ALJ failed to evaluate the severity of claimant's medical impairments per the requirements of SRR 96-3; fourth, the ALJ inappropriately relied upon the "grids" when they were inapplicable given the claimant's physical restrictions and mental impairments; and lastly, the ALJ made no finding on credibility for the claimant but implied that she was not credible. *See* Pl.'s Brief.

## **Expert Medical Opinions**

13.     Plaintiff first contends that the ALJ erred by not following SSR 96-6p regarding

administrative consultative medical opinions. SSR 96-6p states the following:

> Findings of fact made by State agency medical. . . consultants . . .regarding the
> nature and severity of an individual's impairment must be treated as expert opinion
> evidence . . .ALJs may not ignore these opinions and must explain the weight given
> to these opinions in their decision.

The Plaintiff's argument is rooted in the report given by the Administration's own medical

consultant, Dr. Michael Kaufman. Dr. Kaufman stated within his evaluation, that Ms. Baca's

asthma was sever and that "at the present time, she is certainly unable to do any sort of physical

type of work." *See* R. at 251. The Plaintiff alleges that the ALJ simply ignored this evidence and

thus failed to follow the requirements of SSR 96-6p.

14.     When the ALJ is ready to articulate a final decision, he or she must consider all

relevant medical evidence on record in reaching a conclusion as to disability.  *See Baker v. Bowen*,

886 F.2d 289, 290 (10th Cir. 1989) (citing *Ray v. Bowen*, 865 F.2d 222, 226 (10th Cir.1989)

("[t]he ALJ must determine the claimant's eligibility for disability benefits in light of the entire

record") (also citing *Herbert v. Heckler*, 783 F.2d 128, 130 (8th Cir.1986) (it is insufficient that

there are inconsistencies in objective medical evidence to support the Secretary's denial of

benefits, "[t]he Secretary must demonstrate that she evaluated all the evidence"). Although the

ALJ is simply not qualified to analyze bare medical findings in coming to conclusions regarding a

claimant's ability to perform work,  *see Rosado v. Sec'y of Health & Hum. Serv.*, 807 F.2d 292,

293-94 (1st Cir. 1986), it is within the discretion of the ALJ to determine the credibility of

various medical reports in the record. *See Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). In other words, the ALJ cannot substitute his or her judgment for that of a medical expert by finding that the claimant failed to produce evidence that he or she cannot perform at a certain physical level or RFC. *See West v. Sullivan*, 751 F.Supp. 647, 648 (N.D.Tex. 1990). To do so would be to inappropriately shift the Commissioner's burden of proof to the plaintiff. *See Rosado*, 807 F.2d at 293-94; *see also Thompson*, 987 F.2d 1482, 1491 (10th Cir. 1993). More importantly, the ALJ has the ability to resolve conflicts detected within the medical evidence. Since it is the ALJ's duty to resolve conflicts in the record, he may reject a physician's opinion if he gives specific, legitimate reasons for doing so. *See Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir.1988).

15.     In this case, the evidence in question is Dr. Kaufman's evaluation concerning Ms. Baca's sever asthma and her inability to do any sort of physical type of work. Although this evidence may support an RFC determination in favor of Ms. Baca, the Doctor's subsequent comments support an alternative conclusion. Dr. Kaufman's evaluation resulted in his conclusion that "[s]he undoubtedly would do a whole lot better with adequate medication, but, because she is unable to work, she is unable to afford this." *See* R. at 251.[3] Essentially it is the Plaintiff, not the ALJ, who ignored the significance of the Doctor's evaluation regarding the nature and severity of Ms. Baca's impairment. Not only did the ALJ refer to Dr. Kaufman's evaluation, the ALJ alluded to the Doctor's entire evaluation, including the parts the Plaintiff

---

[3]     There is evidence in the record indicating that Ms. Baca was able to access free medication for her asthmatic condition. *See* R. at 323.

omitted in her argument. *See* R. at 21. The ALJ noted that Dr. Kaufman's initial diagnosis stated

that Ms. Baca was unable to do any sort of physical type work, that she was limited to lifting ten

pounds, and that she was limited to standing/walking for one to two hours in an eight hour

workday. *See* R. at 21. However, the ALJ nullified the Doctor Krueger's preliminary assessment

by including his entire prognosis. Therefore, since the ALJ considered and took into account Dr.

Kaufman's medical expert opinion as required by SRR 96-6 and it is in the discretion of the ALJ

to determine how much weight he or she places on such evidence, the Court finds that the ALJ

properly complied with the SSR and the relevant case law.

## Residual Functional Capacity Assessment

16.     The Plaintiff's next argument is that the ALJ failed to accurately determine the

claimant's residual functional capacity (RFC) according to SSR 96-8p. Specifically, the Plaintiff

alleges that the ALJ failed to make the individualized determination of RFC as required by SSR

96-8p and that the ALJ failed to cite to any support for his determination that the claimant could

do medium work. SSR 96-8p states in part:

> The RFC assessment must first identify the individual's functional limitations or
> restrictions and assess his or her work-related abilities on a function-by-function
> basis . . . .It is  the functional limitations or restrictions caused by medical
> impairments and their related symptoms that are categorized as exertional or
> nonexertional.

17.     After a claimant has established at step four that he or she cannot return to his

or her past relevant work, the burden shifts to the Commissioner to show that the claimant retains

the residual functional capacity (RFC) to do other work that exists in the economy. *See Hargis*,

945 F.2d  at 1489. Residual functional capacity is defined by the regulations as "what you can still

do despite your limitations." 20 C.F.R. § 404.1545(a); *see also Davidson v. Sec'y of HHS*, 912
F.2d 1246, 1253 (10th Cir.1990). The ALJ's decision that a claimant retains RFC to do other
work must be based on substantial evidence as are most ALJ determinations. *See Gossett*, 862
F.2d at 804. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence
as a reasonable mind might accept as adequate to support a conclusion.'" *Casias v. Secretary of
Health & Human Services*, 933 F.2d 799,800 (10th Cir. 1991)(quoting *Richardson v. Perales*,
402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971)). In determining a claimant's limitations, the ALJ
should "first assess the nature and extent of [the claimant's] physical limitations and then
determine [the claimant's] residual functional capacity for work activity on a regular and
continuing basis." 20 C.F.R. § 404.1545(b). The ALJ must also consider "all allegations of
physical and mental limitations or restrictions and make every reasonable effort to ensure that the
file contains sufficient evidence to assess RFC. Careful consideration must be given to any
available information about symptoms because subjective descriptions may indicate more severe
limitations or restrictions than can be shown by objective medical evidence." SSR 96-7p.
Furthermore, in all cases in which pain or other symptoms are alleged, the determination or
decision must contain a thorough discussion and analysis of the objective medical evidence as well
as all other evidence, including the individual's complaints of pain or other symptoms and the
adjudicator's personal observations. SSR-95-5p.

    18.    Essentially, the Plaintiff asserts that the ALJ failed to cite any support for his
determination that the claimant could do medium work. In spite of this claim, the ALJ thoroughly
reviewed the objective medical evidence in conjunction with the Plaintiff's testimony in order to

make a fully justified determination of the Plaintiff's RFC. The record indicates that the Plaintiff

had a long history of asthma problems since 1988. *See* R. at 167, 187, 188, 211, 216, and 217.

Ms. Baca also testified that her asthma worsened while working as a janitor in 1996 and while

performing such duties as dusting, vacuuming, and sweeping. *See* R. at 43. Plaintiff treated her

asthma on and off with a nebulizer and an Albuterol inhaler. In September of 1997, the plaintiff

stated that she had not had a serious exacerbation of asthma since her last hospitalization in found

that her asthma would "undoubtedly be a whole lot better with adequate medication, but, that

because she was unable to work, she is unable to afford this." *See* R. at 251. By March of 1998,

Ms. Baca stated that her asthma was under much better control since she started receiving free

medication. *See* R. at 323.

19.     Plaintiff relies on Dr. Kaufman's assessment that Ms. Baca could only lift

between five and ten pounds occasionally and that she could stand one to two hours in an eight

hour day and only five to ten minutes without interruption. *See* R. at 252-53. The Plaintiff argues

that this assessment lends to the conclusion that the claimant would be limited to less than

sedentary work for lifting and carrying and not for medium work. However, the Court finds that

the ALJ did in fact support his determination for the Plaintiff's RFC as being able to do medium

work. While the ALJ did take into consideration Dr. Kaufman's assessment of Ms. Baca's

limitations, the ALJ specifically noted that the Plaintiff's "treating physicians did not place any

functional restrictions on activities that would preclude medium work activities," *see* R. at 23,

and that "the claimant is receiving the proper medication for her asthma, and her asthma is well

controlled." *See* R. at 23; *see also* R. at 211,278,320,322-23.  After reviewing the record, not

only does the Court find that the ALJ properly explained and predicated his RFC determination

with substantial evidence, but the record supports the finding that Ms. Baca is capable of a RFC

of medium work. There is nothing to the contrary in the record that would indicate otherwise,

especially now that her asthma is well under control with her free medicine. Thus, the ALJ

properly assessed the Plaintiff's RFC and supported his determination with sufficient evidence.

## Mental Impairment Assessment

20.     The Plaintiff also argues that the ALJ failed to make an accurate and honest

evaluation of her mental impairment and her ability to do even basic work activities and that

consequently the ALJ posed inaccurate and incomplete hypotheticals to the vocational expert as a

result.

21.     This argument targets the ALJ's assessment of Ms. Baca's mental impairment.

Specifically, the Plaintiff asserts the ALJ "failed to consider certain evidence and that only

selective limited comments out of context were supportive of his decision." *See* Pl.'s Brief at 15.

The Plaintiff also asserts that, as result of the ALJ's failure to evaluate all of the evidence, he

should have included the limitations caused by her learning disability in the hypothetical questions

posed to the vocational expert.

22.     Although the ALJ must demonstrate that he considered all of the evidence in the

record, he is not required to discuss every piece of evidence.  *See Vincent ex rel. Vincent v.*

*Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009-

10 (10th Cir. 1996)). Rather, in addition to discussing the evidence supporting his decision, the

ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as

significantly probative evidence he rejects.  *See Clifton*, (citing *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)) ("a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position.") SSR 96-6p requires an ALJ to treat the fact findings of a state agency reviewing physician as non-examining expert opinion. Although the opinions do not have to be accepted by the ALJ, the ALJ cannot simply ignore them. SSR 96-8p requires the ALJ to consider the opinions of the reviewing physicians and explain the weight given to these opinions.

23.    In this case, the ALJ found that "the record did not support a finding of any other mental or physical disorder [other than the Plaintiff's low verbal and performance I.Q. ratings] which causes significant limitations in the ability to work." *See* R. at 22. The Plaintiff relies on Dr. Krueger's diagnosis of "Borderline Intellectual Functioning," psychological stressors appearing as moderate and a GAF scale of 50. *See* R. at 204.[4] Although the ALJ considered this particular finding, he noted that Dr. Krueger also found that the Plaintiff "showed no clear symptoms of depression or any other major affective disorder." *See* R. at 21 (citing R. at 204). Other evidence also coincides with Dr. Krueger's evaluation. For example, during a physical examination, Dr. Kaufman noted that the Plaintiff had "no difficulty in relating to others and her only limitation for social activities, interests, and daily activities was her asthma and respiratory discomfort." *See* R. at 251. Another physician noted during an evaluation in early 1997, that Ms. Baca was "capable

---

[4]    A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." *See* American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)  (4th ed. 1994) at 30. The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *See id*. at 32.

of simple, unhurried work." *See* R. at 235. The Plaintiff's own testimony confirms Dr. Krueger's opinion that her mental impairment was not the deciding factor in her ability to work. She testified that her main problem that kept her from working was her asthma. *See* R. at 45. Furthermore, her learning disability did not prevent her from working approximately seventeen years as a school custodian. *See* R. at  43. Ms. Baca also stated she was able to drive occasionally, do some housework, and yard work when she felt well enough. *See* R. at 203-04.

24.     The Court also evaluates the Plaintiff's condition in light of the Social Security Administration's Listing of Impairments. *See Listing* §42:134. Section 42:134 prescribes that "the claimant may be found to have met the listed criteria for disability due to mental retardation with valid verbal, performance, or full scale IQ of 59 or less; or a valid verbal, performance or full scale IQ of 60 through 70 *and a physical or other mental limitation of function*. . ." (emphasis added). The ALJ's analysis is consistent with section 42:134's assessment of a disability based on mental retardation. Although Ms. Baca's lowest IQ score of 68  is conclusive evidence of possible mental retardation, Dr. Krueger ascertained that Ms. Baca "did not display any clear symptoms of depression or of having any other major affective disorder." *See* R. at 204. Therefore, in addition to the other evidence in the record establishing that Ms. Baca's asthma is no longer a problem, *see* R. at 251, and the fact that she has been given a functional capacity assessment "to do simple, unhurried work," *see* R. at 235, she fails to meet the criteria in Listing 12.05(C) for Mental Retardation and Autism.

25.     Additionally, Ms. Baca asserts that because she was assessed at a level of 50 on

the GAF scale, she essentially has a mental impairment. The DSM-IV defines a GAF of 50 to 41 as "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders DSM-IV at 32 (4th ed.1994). Although Ms. Baca was graded at a level 50 on the GAF scale in Dr. Krueger's evaluation, there is contrary evidence in the record indicating that her social interaction is not significantly limited. *See* R. at 190 and 234. The Court also points out that the "Note" introducing the "Description of Functioning" for the GAF scale states that this scale "is intended for academic use only" and should be used "on a hypothetical continuum of mental health-illness." *See* DSM-IV at 32. This precursor/"Note" to using the GAF scale is highly suggestive of a subjective determination that should be assessed on a continuous basis.

26.     Additionally, when a GAF scale of 50 is taken into consideration in a social security case, the overwhelming majority of cases, where benefits have been awarded, rely on some additional mental or physical impairments that support a GAF score of 50. *See Birnell v. Apfel*, 45 F.Supp.2d 826 (D.Kan. 1999) (In addition to a GAF scale of 50, the ALJ found the presence of severe mental impairments including situational depression, atypical anxiety, a personality disorder, and a substance abuse disorder.); *see also Cox v. Apfel*, 2000 WL 1472729 (D.Kan.2000) (several consultative examiners concluded that claimant demonstrated chronic alcoholism, depression, borderline intellectual functioning, and an antisocial personality disorder in addition to a GAF score of 35).

27.     After thoroughly reviewing the record, the Court finds that the ALJ supported his

decision by evaluating Dr. Krueger's psychological evaluation of Ms. Baca and then by sifting through the rest of the record to evaluate whether there was any other additional information pertaining to Ms. Baca's mental impairment. Hence, it is appropriate for the ALJ to withhold questions pertaining to Ms. Baca's mental impairment from the vocational expert since the ALJ properly made the determination that the impairment did not pose significant limitations. *See Thompson*, 987 F.2d at 1491 1488-89.

## Use of the "Grids"

28.     In connection with the Plaintiff's argument concerning the ALJ's failure to evaluate the medical evidence relating to Ms. Baca's mental impairment, she also argues that her limited mental and physical capacities resulted in the prohibited use of the grids. Specifically, the Plaintiff alleges that the ALJ improperly relied on the grids because the ALJ failed to accurately assess the claimant's physical restrictions and limited mental capacity which resulted in an inaccurate assessment that she could do medium work. The Court finds this argument unpersuasive for mainly two different reasons.

29.     First and foremost, the ALJ made a proper assessment of the claimant's RFC and thus was permitted to refer to the grids for guidance. "In the application of the rules [grids or Medical-Vocational Guidelines], the individual's residual functional capacity (i.e., the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs), age, education, and work experience must first be determined." 20 C.F.R. Pt.404, Subpt.P, App.2, § 200.00(c). The ALJ may rely upon the grids when no significant nonexertional impairment exists.  *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir.

1993). "The grids should not be applied conclusively in a particular case ... unless the claimant could perform the full range of work required of that [RFC] category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (citations omitted); *accord*, Campbell, 822 F.2d at 1523 (Secretary must show claimant can perform substantial majority of jobs in RFC category).

30.    In this case, the ALJ supported his RFC determination on Ms. Baca's treating physicians, Ms. Baca's testimony, and the vocational expert's testimony. The ALJ merely used the grids as a framework, in conjunction with the vocational expert's testimony. Even if the ALJ placed more weight on the grids, the ALJ's reference to them still would not constitute an improper use since there was no finding of a nonexertional limitation. *See Thompson*, 987 F.2d at 1488.

31.    Secondly, the Plaintiff relies on the case *Curse v. United States Department of Health and Human Services*, 49 F.3d 614 (10th Cir. 1995) in her argument. The Plaintiff interprets the case to say a claimant's nonexertional problems of asthmatic/wheezing cough along with her mental restrictions due to significant problems with concentration and memory skills foreclose the use of the grids. *See* Pl.'s Brief at 16 (citing *Curse*, 49 F.3d at 619). However, the *Curse* case does not state this conclusion. The Court's conclusion in *Curse* was that "[w]hen there is evidence of a mental impairment that allegedly prevents a claimant from working, the Secretary must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. §404.1520a and the Listing of Impairments and document the procedure accordingly." *Curse*, 49

F.3d at 617. There is no mention in the opinion regarding the ALJ's use of the grids with respect

to mental impairments. Additionally, the claimant in the *Curse* case was diagnosed with extreme

depression coupled with reported suicide ideation. *See Curse*, 49 F.3d at 616. Ms. Baca's alleged

mental impairment is completely distinguishable from Ms. Curse's mental impairment. The record

in this case suggests that Ms. Baca has "Mild Mental Retardation" with compromised verbal and

visual motor skills. *See* R. at 189 and 205. Therefore, according to the Court in *Curse*, the ALJ

did not have to follow the suggested procedure since Ms. Baca does not have an impairment that

prevents her from working. *See Curse*, 49 F.3d at 617.

### Credibility Assessment

32.     The Plaintiff's final argument alleges that the ALJ's credibility determination is

unsupported by substantial evidence and legally erroneous. It is well established principle that it is

not this Court's task to make an independent judgment as to the credibility of the claimant's

testimony regarding her subjective physical symptoms. "[T]he determination of credibility is left to

the observations made by the Administrative Law Judge as the trier of fact." *Broadbent v. Harris*,

698 F.2d 407, 413 (10th Cir.1983). "However, '[f]indings as to credibility should be closely and

affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"

*Huston v. Bowen*, 838 F.2d 1125, 1131, 1133 (footnote omitted)  (10th Cir. 1988), (citing

*Kepler*, 68 F.3d at 391).

33.     In addition to discussing the evidence supporting the ALJ's decision regarding

credibility, the ALJ must also discuss the uncontroverted evidence upon which he chooses not to

rely, as well as the significantly probative evidence which he rejects. *See Casias v. Sec'y of Health*

*& Hum. Serv.*, 933 F. 2d 799, 801 (10th Cir. 1991); *see also Miller v. Chater*, 99 F.3d 972, 976

(10th Cir.1996) (ALJ must give legitimate reasons to reject treating physician's opinion). The ALJ

cannot ignore other objective evidence favoring the plaintiff simply because he has already found

plaintiff not credible. *Id.* Ignoring such evidence violates both his duty of inquiry, *Henrie v. U.S.*

*Dept. of Health & Hum. Serv.*, 13 F.3d 359, 361 (10th Cir. 1993), and the prohibition on picking

through the record for isolated bits of evidence. *Id.*

      34.    The ALJ should consider such factors as "the levels of medication and their

effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the

frequency of medical contacts, the nature of daily activities, subjective measures of credibility that

are peculiarly within the judgment of the ALJ, the motivation of and relationship between the

claimant and other witnesses, and the consistency or compatibility of non-medical testimony with

objective medical evidence." *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quoting

*Huston*, 838 F.2d at 1132 and n. 7).

      35.    In this case, the ALJ noted that the Plaintiff's "statements concerning her

impairments and their impact on her ability to work were not entirely credible in light of the

degree of medical treatment required, the medical history, and the findings made on examination."

*See* R. at 23. After reviewing the record, there is ample evidence to support this conclusion. For

example,  the ALJ noted that "the claimant [was] receiving the proper medication for her asthma,

and her asthma was well controlled by medication." *See* R. at 23; *see also* R. at 251. He also

noted that "the claimant stated her last asthma 'attack' was on February 2, 1997." *See* R. at 23.

The record also consists of evidence that the Plaintiff was noncompliant in taking medication. *See*

R. at 351.

36. Moreover, the Plaintiff testified that the reason she could no longer work at the high school was because she could not work around the fumes and the dust. *See* R. at 203 and 249. However, the principal stated, in an evaluation form, that Ms. Baca did not make "sufficient improvement in her growth plan and that she continues to have a variety of excuses for being late and needing to leave work early, or not show up at all." *See* R. at 143. The Plaintiff also testified that she applied for unemployment benefits without knowing that an application for such benefits is a clear indication of one's ability to work. *See* R. at 40-41. The ALJ also asked Ms. Baca about her daily activities to which she responded that she could clean the house, prepare meals and do her own shopping but that her boyfriend shared in the responsibilities. *See* R. at 53. Ms. Baca also reported that she could do yard work and that she was capable of taking care of her own personal needs. *See* R. at 203-04.

37. Since it is not the duty of this Court to make an independent judgment as to the credibility of the Plaintiff's testimony regarding her subjective physical symptoms, this Court defers to the ALJ's finding. However, the ALJ must have based his finding on substantial evidence. In coming to his conclusion, the ALJ based his credibility assessment of the claimant on evidence on the record and reasonably determined that the claimant was not credible due to numerous findings of the claimant's personal physicians. Therefore, I agree with the ALJ's findings and hold that Plaintiff's testimony of subjective complaints and functional limitations was not supported by the evidence as a whole to the disabling degree alleged and therefore lacked credibility.

## RECOMMENDED  DISPOSITION

The ALJ applied the correct legal standards and the decision is supported by substantial evidence.  I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing (*Doc. 8*), filed January 31, 2001, be denied, the decision of the ALJ affirmed, and this case dismissed. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and recommendations that party may  file with the Clerk of the District Court written objections to such proposed findings and recommendations.  A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____

**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**